# Smith *versus* Beck.

Actual residence is absolutely indispensable to the validity of a title by settlement, and this must be continued until the title is taken out of the land office.

Improvements on the land, and the erection of a dwelling-house, though by mistake, on an adjoining tract, will not dispense with the imperative requisition of actual residence.

Residence by tenants will continue the pre-emption right.

If actual residence be discontinued for five years, and not accounted for, it is an abandonment, and should be so pronounced by the Court as matter of law.

*Quære,* if a shorter period will produce the same effect.

If a settler entitled to 400 acres, sell a part of his claim, including his residence, and separate it by survey and possession from the residue, the latter is abandoned, unless a separate residence be commenced and continued thereon within a reasonable time.

If a settler divide and sell portions of his right to several persons, one of whom keeps up an actual residence on his part, and the purchaser of another part does not reside thereon, a presumption of abandonment may arise against the latter in consequence of his non-residence, and the Court erred in affirming the contrary doctrine.

ERROR to the Common Pleas of *Venango county.*

This was an ejectment brought by Beck against Smith for 100 acres of land in the purchase of 1784. Both parties claimed by actual settlement.

The land in dispute is part of a larger tract settled by one Moorhead in 1833, who excluded it from his claim by an official survey made that year; after this, Kennedy commenced a settlement on the land, but did not pursue it. Moorhead then having sold his other land, commenced a clearing on this, and gave it up or sold it to one Shannon, who, after deadening some trees, left without doing more. Early in 1839 Avery raised a cabin up to the square, and in the spring or next fall of the same year, Beck, the plaintiff below, had an acre or more cleared and moved on to the land with his family, and fixed up the cabin and lived in it five or six weeks, and then moved back to his farm in Clarion county, twenty miles from the land, where he has resided ever since. Shortly after he put a tenant on the land who occupied it five or six months and then went off; and after this he put Brown into possession, who left in 1843 or '44, the cabin then being partly down, and no one actually residing on the land afterwards until the defendant below moved on in 1853 with his family. After Brown left, the cabin was usually left open, became roofless and dilapidated—fences, &c., in bad condition, and the land used for pasture and otherwise at intervals, by persons living adjacent. It was

[Smith v. Beck.]

wholly vacant in 1852, and until the time defendant below took possession in March, 1853.   He then fixed up the cabin and moved into it, planted potatoes and other crops, and procured an official survey to be made of the whole land embraced in his actual settlement.

This ejectment was brought to August Term, 1853, and served July 1853.

There was considerable discrepancy between the respective parties in their several statements of the facts.   The defendant in error stated that Beck claimed by purchase from the assignees of Moorhead, who had settled the whole tract of which the land in controversy was a part.   That the object of Moorhead's survey was to ascertain its contents ; that after selling to Shannon that part of the land he lived on, he improved the residue, being the land in dispute, and asserted his claim to it, having no intention to abandon it, and afterwards sold to Sanford, who sold to Beck ; and that Beck had ever since kept up his occupancy and personal residence, by himself and tenants, until 1852, when he leased the land to Maitland for five years, who neglected to go on the land for a year and did not inform Beck of his neglect; and in the mean time, Smith, the plaintiff in error, moved on the land, had a survey made, immediately occupied the house Beck had built, and claimed to hold it as abandoned by Beck, and open to settlement.   And defendant in error affirmed that there was not a particle of evidence to show anything else than a continuity of possession and residence by Beck and his tenants.

It will be seen in the opinion of the Court that they lay down the general doctrine governing claims by settlement, without special application to the facts ; except to the answer of the Court below to the plaintiff's 4th point.

The plaintiff's fourth point was—" That when a person commences an actual resident settlement on vacant land in Pennsylvania, he acquires an inceptive title to 400 acres ; that after having his boundaries marked, including that quantity, he may subdivide it into as many parts as he pleases, and if he does divide and sell to different persons, one of whom keeps up an actual personal resident settlement such as is required by the Act of 1786, no presumption of abandonment can arise against a *bonâ fide* purchaser of any other part of said tract in consequence of his not residing on his part of said tract."   Which point the Court answered in the affirmative.

*Church*, for plaintiff in error—as regards the 4th point said— That upon a subdivision and sale of part of a settlement right, the vendee's residence on his portion is exclusive of the residue, and leaves no room for inference of the necessary *manifest intention* of continuing the owner's personal residence, and making the same a place of abode and the requisite means of supporting his

family.   When Moorhead procured a survey of a part only, there was clearly a presumption of abandonment of the residue, but the Court instructed that no such presumption could arise.

The fact that various persons commenced a settlement successively on the land, is not evidence that they purchased each others' rights, and yet this alone is all that the Court submit to the jury as evidence to find the fact.

*E. C. Wilson,* for defendant in error, argued the doctrine of abandonment generally, and contended that the evidence did not sustain the presumption; that the possession of Beck and his tenants had such a continuity that an abandonment would not be presumed from lapse of time; that the whole question of settlement and occupancy was one of fact, and was properly left to the jury under the instructions of the Court: Brentlinger *v.* Hutchinson, 1 *Watts* 46; Starr *v.* Bradford, 2 *P. R.* 384; Heath *v.* Biddle, 9 *Barr* 273.

The opinion of the Court was delivered by

LEWIS, C. J.—A title by settlement differs in many essential particulars from one acquired under the Statute of Limitations. The first is by right, the last by wrong.   The occupier in the first case is a purchaser, in the last a disseisor.   The first exists only where the land is vacant, the last where it has been previously appropriated.   In the first an actual residence is absolutely indispensable; in the last possession alone, without residence, is sufficient.   In the first the residence must be continued until the title is taken out of the land office; in the last the continuance of the possession for twenty-one years completes the title without more. In the first case the claimant purchases and pays the price agreed upon; in the last his title is perfected without purchase or payment.   So imperative is the requisition for actual residence, as the foundation of title by settlement, that if the dwelling-house, even by mistake, is located on an adjoining appropriated tract, the pre-emption right fails, although the principal part of the improvements be on the vacant land.   Porter *v.* McGinnis, 1 *Barr* 413, recognises the distinction indicated in what has been said; but as that was the case of a title, under the Statute of Limitations, a residence was not required.

One man cannot be a settler on two tracts: 4 *Yeates* 537; but he may hold the pre-emption right of several, if actual residence be kept up and continued on each by his tenants: 8 *Watts* 430. Where the residence has been discontinued for the period of five years, and the discontinuance is not accounted for, it is an abandonment of the pre-emption right, and should be so pronounced by the Court as matter of law.   This has been more than once determined by this Court.   Whether absence for a shorter period will produce the same effect, has not yet been decided.   If the claimant

[Smith *v.* Beck.]

be driven off, or be compelled to leave on business, he must return as soon as he reasonably can. The mere intention to commence or to continue a residence, at some future period, when it may suit his convenience, cannot be substituted for performance. If one entitled by settlement to 400 acres, sell a portion of his claim, including his residence, and separate it by survey and possession from the residue, the latter is abandoned unless a separate residence be commenced and continued thereon. When any portion of the claim is thus severed from the actual residence which gives it vitality, its existence as a pre-emption right is, to say the least of it, so precarious that it cannot be preserved without an actual residence commenced upon it within a reasonable time after such severance, and duly continued as the law requires. If a settler divide and sell portions of his claim to different persons, one of whom keeps up an actual residence on his part, a presumption of abandonment may arise against a purchaser of one of the other parts of the tract, in consequence of his not residing on his part; and the Court fell into error in affirming the contrary doctrine in answer to the plaintiff's fourth point. So far as the principles herein stated have been negatived, the instructions are erroneous. We are not able to say how far the Court submitted questions of fact to the jury without evidence. To do so is of course error. But to enable us to review a question of that kind, the recent decisions require that the evidence on the point shall be particularly specified in the Court below, and placed on the record here. It is the duty of the party who alleges that there is evidence of a particular fact, to set it forth specially on the demand of the opposite party.

We see no error except those already indicated.

Judgment reversed and *venire facias de novo* awarded.